PEOPLE v BURGENMEYER

Docket No. 112173. Decided March 7, 2000. On application by the defend-
    ant for leave to appeal, the Supreme Court, in lieu of granting
    leave, affirmed the decision of the Court of Appeals. Rehearing
    denied *post*, 1289.

Albert L. Burgenmeyer was convicted by a jury in the Montcalm Cir-
    cuit Court, James K. Nichols, J., of possessing between 50 and 225
    grams of cocaine, possession of a firearm during the commission of
    a felony, and maintaining a house from which drugs were sold. The
    Court of Appeals, D. E. HOLBROOK JR., P.J., and MACKENZIE and
    SAWYER, JJ., affirmed in an unpublished opinion per curiam (Docket
    No. 139899). The defendant later moved for relief from judgment,
    but the trial court denied the motion, as well as reconsideration of
    its decision. Thereafter, the Court of Appeals, CAVANAGH, P.J., and
    JANSEN and O'CONNELL, JJ., denied leave to appeal in an unpublished
    order (Docket No. 202236). The defendant seeks leave to appeal.

    In a unanimous opinion per curiam, the Supreme Court *held*:

    There was sufficient evidence to allow the jury to convict the
    defendant of felony-firearm.

    1. The felony-firearm statute applies to persons who carry or
    possess a firearm when committing or attempting to commit a fel-
    ony. It does not prohibit ownership of a firearm. Further, the prohi-
    bition pertains only to the time a crime is being committed or
    attempted. A person does not violate the statute by committing a
    felony while merely owning a firearm. The proper question is
    whether the defendant possessed a firearm at the time a felony was
    committed. The fact that the defendant did not possess a firearm at
    the time of arrest or at the time of the police raid is not relevant in
    the circumstances of this case.

    2. In a prosecution for delivery of a controlled substance and for
    felony-firearm, the question is whether the offender possessed a
    firearm at the time of delivery. When a defendant is prosecuted for
    possession of a controlled substance, however, the inquiry is poten-
    tially more complex. A drug-possession offense can take place over
    an extended period, during which an offender is variously in prox-
    imity to the firearm and at a distance from it. In such a case, the
    focus is on the offense dates specified in the information.

    Affirmed.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Andrea Krause*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

Albert L. Burgenmeyer in forma pauperis.

PER CURIAM. The defendant stands convicted of drug charges and of possessing a firearm during the commission of a felony. The Court of Appeals affirmed his conviction, which we likewise affirm today. However, we write to clarify the analysis to be employed in similar felony-firearm prosecutions.

I

In August 1990, defendant Albert L. Burgenmeyer was sharing a house with a man named Allen L. Foster, whom he had met when Mr. Foster began dating the defendant's sister. The defendant operated a tow-truck service, and Mr. Foster worked for him. Mr. Foster also sold cocaine from the home.

Raiding the home in August 1990, the police confiscated drugs, drug paraphernalia, and firearms. The firearms included two handguns that were on top of a dresser, within three feet of the dresser drawer in which the cocaine was located. At the time of the raid, neither the defendant nor Mr. Foster was present—earlier in the evening, they had been arrested a short distance from the home.

In its 1993 opinion of affirmance,[1] the Court of Appeals gave this factual summary:

---

[1] Unpublished opinion per curiam, issued January 27, 1993, reh den April 30, 1993 (Docket No. 139899).

This case arises from the undercover buy of cocaine from one Allen Foster. An undercover officer purchased two ounces of cocaine from Foster for $2,300 in marked bills. After the officer asked him for an additional half-ounce of cocaine, Foster walked toward a residence on Cass Street in Greenville and returned five minutes later with the additional cocaine. The undercover officer then left to obtain a search warrant for the residence.

One-half hour after the undercover purchase of cocaine, a surveillance team observed Foster and the defendant leaving the residence in a car. The police stopped the car, arrested Foster, and detained the defendant for investigative questioning. The police recovered from the defendant's person $700 of the marked bills used to purchase cocaine from Foster. After returning to the residence, the police performed a search without a warrant of the house. No other persons were in the house. The police did not attempt to search for or seize contraband.

Defendant was then transported to and questioned at the police station. Defendant waived his *Miranda*[2] rights. He indicated there were approximately two additional ounces of cocaine in his bedroom at his house on Cass Street. He also stated that he knew Foster was selling cocaine out of his house and that he had previously given money to Foster to invest in cocaine. Later that same night, the police executed a search pursuant to a warrant of the defendant's residence. The police found the rest of the marked bills, cocaine, drug paraphernalia, and four firearms.

The defendant was charged with possessing between 50 and 225 grams of cocaine,[3] possessing a firearm during the commission of that felony,[4] and

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] MCL 333.7403(2)(a)(iii); MSA 14.15(7403)(2)(a)(iii).

[4] The information charged that "[o]n or about 8-8-90" the defendant "did carry or have in his possession a firearm, to-wit: a handgun, at the time he committed or attempted to commit a felony, to-wit, Possession of Cocaine; contrary to MCL 750.227b; MSA 28.424(2)."

maintaining a house from which drugs were sold.[5]

The defendant was tried in January 1991. During trial, he moved unsuccessfully for a directed verdict on each of the counts against him. He then testified that he was innocent of the drug charges, and that he was a hunter who owned firearms for legitimate purposes. However, the jury convicted him, as charged, on all three counts.[6]

In January 1993, the Court of Appeals affirmed the defendant's convictions. In its opinion, the Court of Appeals said that the circuit court had not erred in denying the motion for directed verdict on the felony-firearm charge:

> Next, the defendant claims that the trial court erred in denying his motion for a directed verdict on the felony-firearm charge. Citing *People v Myers*, 153 Mich App 124; 395 NW2d 256 (1986), he argues that no evidence was proffered showing his possession of the firearm during the commission of a felony. He avers that the firearms were found in his house near the cocaine and he was arrested two blocks from his house.
>
> In reviewing a claim from the denial of a directed verdict motion, this Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Jolly*, 193 Mich App 192, 196; 483 NW2d 679 (1992) [rev'd on other grounds 442 Mich 458; 502 NW2d 177 (1993)]. In this case, the defendant admitted that there were two ounces of cocaine in his bedroom. The police found in the defendant's bedroom both the cocaine and the

---

[5] MCL 333.7405(d), 333.7406; MSA 14.15(7405)(d), 14.15(7406).

[6] In March 1991, the defendant was sentenced to a ten- to twenty-year term in prison for possession of cocaine. He also was sentenced to serve a concurrent term of sixteen to twenty-four months for maintaining a drug house, and a consecutive two-year term for felony-firearm.

firearms. The defendant's access to the weapon should not be determined solely by reference to his arrest, but should also rely upon his access to it when the crime was committed. *People v Becoats*, 181 Mich App 722, 726; 449 NW2d 687 (1989). Accordingly, the trial court did not err in denying the defendant's motion for a directed verdict where the defendant could be found to have possessed the firearm during the commission of the felony.

The defendant applied to this Court for leave to appeal, but the application was denied. 444 Mich 902 (1993).[7]

In 1996, the defendant filed a motion for relief from judgment. Perhaps responding to the title of the motion,[8] the circuit court treated it as a motion for reconsideration of the judgment. Employing the standards set forth in MCR 2.119(F), the circuit court denied the motion in a brief written decision. Later, the circuit court denied reconsideration of that decision.

In March 1997, the defendant filed a delayed application for leave to appeal, which the Court of Appeals denied "for failure of the defendant to meet the burden of establishing entitlement to relief under MCR 6.508(D)."[9]

The defendant filed in this Court a delayed application for leave to appeal. We ordered the prosecuting attorney to answer the application and to address the issue "whether there was sufficient evidence to support the felony-firearm conviction, MCL 750.227b;

---

[7] Cert den 511 US 1045 (1994).

[8] The defendant labeled his submission a "Motion to Set Aside or Modify Judgment and/or for Re-sentencing," but he correctly indicated that it was being filed pursuant to MCR 6.502, which governs motions for relief from judgment.

[9] Unpublished order, issued April 13, 1998 (Docket No. 202236).

MSA 28.424(2) . . . . See also *People v Williams*, 212 Mich App 607 [538 NW2d 89] (1995), lv den 451 Mich 860 (1996)."

The prosecutor has filed an answer, and the case is again before us for a decision on the defendant's delayed application for leave to appeal.

## II

The felony-firearm prohibition is set forth in MCL 750.227b(1); MSA 28.424(2)(1), and applies to "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . ."[10] On its face, the statute concerns a defendant who carries or possesses a firearm—it does not prohibit *ownership* of a firearm. Further, the prohibition pertains only to the time when a crime is being committed or attempted.

In *Williams*, the Court of Appeals began with a short statement of the facts:

> During a search of defendant's house pursuant to a warrant, police found cocaine locked in a file cabinet in defendant's bedroom closet and a .32 caliber revolver in a dresser next to the closet. At the time of the search, defendant was not at home. [212 Mich App 608.]

The defendant in *Williams* was convicted of possessing 225 to 650 grams of cocaine and of felony-firearm.

Reversing Mr. Williams' conviction for felony-firearm, the Court of Appeals said that the offense of

---

[10] As we stated in *People v Philabaun*, 461 Mich 255, 262, n 16; 600 NW2d 611 (1999), "[t]he meaning of a statute is a question of law, which we decide de novo. *People v Law*, 459 Mich 419, 423; 591 NW2d 20 (1999)."

felony-firearm cannot be committed unless the fire-
arm is "reasonably accessible" to the offender:

> With respect to the element of possession, defendant
> argues that, for the purposes of the felony-firearm statute, a
> person away from home cannot be deemed in possession of
> a firearm found in his house. We agree. Possession may be
> actual or constructive and may be proved by circumstantial
> evidence. *People v Hill*, 433 Mich 464, 469-471; 446 NW2d
> 140 (1989). A defendant may have constructive possession
> of a firearm if its location is known to the defendant and if
> it is reasonably accessible to him. *Id.* at 470-471. . . . Pun-
> ishing a defendant for possession of a firearm that is not
> accessible or at his disposal, as opposed to being under less
> immediate dominion or control, does not fulfill the purpose
> of the felony-firearm statute. Accordingly, the possession
> requirement of the felony-firearm statute has been
> described in terms of ready accessibility. See, e.g., *People v
> Becoats*, 181 Mich App 722, 726; 449 NW2d 687 (1989); *Peo-
> ple v Terry*, 124 Mich App 656, 661; 335 NW2d 116 (1983),
> citing *People v Davis*, 101 Mich App 198, 203, n 2; 300 NW2d
> 497 (1980). Such accessibility does not exist where, as here,
> a defendant is far away from the location of the firearm.
> [212 Mich App 609-610.]

The basis for this discussion was *People v Hill*,
*supra* at 470-471, where the issue was whether two
defendants could be charged with possession of one
short-barreled shotgun[11] when each possessed one of
the two component parts that composed the shotgun.
In that setting, we said that possession—both "actual"
and "constructive"—requires proximity and reasona-
ble accessibility:

> A general discussion of "possession" is found in 72 CJS,
> Possession, p 233 (1951), which provides, "[the term posses-

---

[11] MCL 750.224b;  MSA 28.421(2).

sion] is interchangeably used to describe actual possession and constructive possession, which often so shade into one another that it is difficult to say where one ends and the other begins."

*      *      *

Michigan courts also have recognized that the term "possession" includes both actual and constructive possession. As with the federal rule, a person has constructive possession if there is proximity to the article together with indicia of control. *People v Davis*, 101 Mich App 198; 300 NW2d 497 (1980). Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession. *People v Terry*, 124 Mich App 656; 335 NW2d 116 (1983). [433 Mich 470-471.]

The quoted passages from *Williams* and *Hill* are sound insofar as they remind us that possession of a weapon is not the same thing as ownership of a weapon. Thus, a person does not violate MCL 750.227b; MSA 28.424(2) by committing a felony while merely owning a firearm. To be guilty of felony-firearm, one must *carry* or *possess* the firearm, and must do so *when* committing or attempting to commit a felony.

The *Williams* Court concluded that, because Mr. Williams was not home when the police found drugs and a firearm, he could not be convicted of possessing the firearm. The panel's error lay in its focus on the time of the raid. In *Williams*, the Court of Appeals treated the statute as though it prohibits possession of a firearm when a person is arrested for a felony, or when the police locate proof that a person has committed a felony. That is not what the statute

says. The proper question in *Williams*—and in the case before us today—is whether the defendant possessed a firearm *at the time he committed a felony*. The fact that the defendant did not possess a firearm at the time of arrest, or at the time of the police raid, is not relevant in the circumstances of this case.

Many criminal offenses occur within a short interval of time, and witnesses often see the use or display of a weapon, if one is present. Thus, the inquiry about the element of possession is simplified. In a prosecution for delivery of a controlled substance and for felony-firearm, the question would be whether the offender possessed a firearm at the time of the delivery. When a defendant is prosecuted for *possession* of a controlled substance, however, the inquiry is potentially more complex. A drug-possession offense can take place over an extended period, during which an offender is variously in proximity to the firearm and at a distance from it.[12] In a case of that sort, the focus would be on the offense dates specified in the information.

III

In the present case, the defendant was taken into police custody late in the evening of August 7, 1990. Questioned by the police about twenty-five minutes later, he acknowledged that there was cocaine in his

---

[12] Possession of drugs occurs when the defendant has dominion and control over them. See *People v Konrad*, 449 Mich 263; 536 NW2d 517 (1995). It occurs when the defendant knowingly has the power and intention to exercise dominion or control over the drugs either directly or through another person. See *People v Sammons*, 191 Mich App 351, 371; 478 NW2d 901 (1991). Or, it occurs when the defendant is in proximity to the drugs and has control over them.

bedroom. When the police executed the search warrant shortly after midnight, on August 8, 1990, they found cocaine in a dresser drawer in his bedroom, and firearms atop the dresser.

In pertinent part, the charge in this case is that the defendant possessed a firearm on or about August 8, 1990, "when" committing the felony of possession of cocaine. The evidence submitted to the jurors, concerning events that occurred in the late evening and after midnight on August 7-8, was sufficient to allow them to infer that the defendant committed the offense of felony-firearm. The drugs and the weapons were close enough that a jury reasonably could conclude that the defendant possessed both at the same time, as the prosecutor had charged.

For these reasons, we affirm the judgments of the Court of Appeals and the circuit court.[13] Further, we overrule *People v Williams, supra,* to the extent that it is inconsistent with the analysis offered in this opinion. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[13] We have considered the other arguments raised by the defendant, but are not persuaded that relief should be granted on those claims.